**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| JASON POE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:24-CV-00043-SPM |
| | ) |
| LELAND DUDEK, | ) |
| Acting Commissioner of Social Security, [1] | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Leland Dudek, Acting Commissioner of Social Security (the "Commissioner") denying the applications of Plaintiff Jason Poe ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF No. 6). Because I find the decision denying benefits was supported by substantial evidence, I will affirm the Commissioner's denial of Plaintiff's application.

---

[1] Leland Dudek is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek is substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I.     **BACKGROUND**

On October 26, 2021, Plaintiff applied for DIB, and on December 2, 2021, Plaintiff applied for SSI, alleging he had been unable to work since October 4, 2021. (Tr. 315-16, 319-26). Plaintiff alleged disability due to chronic irritable bowel syndrome, chronic migraines, chronic insomnia, fibromyalgia, chronic depression, attention deficit hyperactivity disorder, dyslexia, reading comprehension understanding disorder, hearing comprehension understanding disorder, and anxiety. (Tr. 364). His applications were denied initially and on reconsideration. (Tr. 215-24, 228-34). On May 13, 2022, Plaintiff filed a Request for Hearing by Administrative Law Judge ("ALJ") (Tr. 235-36).

On February 2, 2023, Plaintiff testified at a hearing before the ALJ. Plaintiff testified, *inter alia*, that he has insomnia that makes it difficult to function, especially when his work schedule moves around; that his irritable bowel syndrome causes problems every day, multiple times a day; that he has headaches at least 16 to 20 days out of the month, ranging between a pain level of 5 or 6 to a 10 or 11; that when he was working he sometimes got headaches and had to go into the breakroom for about 45 minutes to an hour until they dissipated; that when he gets a migraine, he has to go into a dark room for about six hours; that he gets Botox injections and takes other medications for his headaches; and that he has ankle and wrist problems (Tr. 8-23).

On March 29, 2023, the ALJ issued an unfavorable decision. (Tr. 138-58). On May 1, 2023, Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council (Tr. 309-11). On November 8, 2023, the Appeals Council denied the request for review. (Tr. 131-37). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration

The Court accepts the facts as set forth in the parties' respective statements of fact and responses.

## II.   STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Social Security Act, a person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in

3

§ 404.1509 or § 416.909], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner finds the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

  Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), which is "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant is found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v),

404.1520(g), 404.1560(c)(2), 416.920(a)(4)(v), 416.920(g), 416.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).

### III.   THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff had not engaged in substantial gainful activity since October 4, 2021, the alleged onset date; that Plaintiff had the severe impairments of migraine headaches, irritable bowel syndrome, attention deficit hyperactivity disorder, post-traumatic stress disorder, personality disorder, unspecified anxiety disorder, and major depressive disorder; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr 143-44). The ALJ found that Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [he] can occasionally climb, stoop, kneel, crouch and crawl; he can occasionally work around hazards (such as unprotected heights and moving mechanical parts); and he can work in an environment with no more than a moderate noise level (as defined by the SCO). Mentally, the claimant can perform simple and routine tasks; and he can interact with coworkers and the public on an occasional basis.

(Tr. 146). At Step Four, the ALJ found Plaintiff was unable to perform any past relevant work. (Tr. 151). At Step Five, relying on the testimony of a vocational expert, the ALJ found that considering the Plaintiff's age, education, work experience, and RFC, there are jobs that exist in

significant numbers in the national economy that the claimant could perform, including representative occupations such as cleaner, housekeeping; routing clerk; and marker. (Tr. 152). Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, from October 4, 2021, through the date of his decision. (Tr. 153).

### IV. STANDARD FOR JUDICIAL REVIEW

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir. 2008)); *see also* 42 U.S.C. §§ 405(g); 1383(c)(3). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted). *See also Biestek*, 587 U.S. at 103 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consol. Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894

6

(8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

The Court reviews de novo whether the Commissioner's determination was based on legal error. *Dewey v. Astrue*, 509 F.3d 447, 449 (8th Cir. 2007) (citing *Miles v. Barnhart*, 374 F.3d 694, 698 (8th Cir. 2004)); *Keller v. Shalala,* 26 F.3d 856, 858 (8th Cir. 1994)). "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Collins v. Astrue,* 648 F.3d 869, 871 (8th Cir. 2011) (internal citations omitted).

## V. DISCUSSION

Plaintiff challenges the ALJ's decision on several grounds, arguing that the ALJ failed to properly evaluate the medical opinion evidence from the state agency physical consultants; that the ALJ failed to properly evaluate the opinions of the state agency mental consultants; that the ALJ failed to properly evaluate the opinion of nurse practitioner Loretta Colvin regarding Plaintiff's insomnia; that the ALJ failed to properly evaluate the opinion of neurologist Niranjan Singh, M.D., regarding his migraines; and that the RFC is not supported by substantial evidence because it is based on the opinions of the non-examining state agency consultants and the ALJ's own inferences from the medical records and other records and not the opinions of treating or examining sources. The Court has reviewed the entire transcript and the parties' briefs. After careful review of the record, for the reasons stated below and in the Commissioner's brief, the Court finds that the ALJ's decision is free from legal error and that record as a whole contains substantial evidence to support the ALJ's finding that Plaintiff was not disabled.

The Court first briefly addresses Plaintiff's arguments regarding the ALJ's evaluation of the opinion evidence. The ALJ must evaluate the persuasiveness of medical opinions in light of the following factors: (1) supportability (the degree to which the medical source presents objective medical evidence and supporting explanations to support his or her opinions); (2) consistency (how consistent the opinion is with evidence from other medical and nonmedical sources); (3) relationship with the claimant (including the length, purpose, nature, and extent of the relationship, and the frequency of examinations); (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the] disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c). The first two factors—supportability and consistency—"are the most important factors" to consider when determining the persuasiveness of a medical source's medical opinions, and the ALJ must "explain how [he or she] considered the supportability and consistency factors" in the decision. §§ 404.1520c(b)(2), 416.920c(b)(2). An ALJ's failure to address either the "supportability" factor or the "consistency" factor with respect to a particular medical opinion is a legal error that may require remand. *See, e.g., Starman v. Kijakazi*, No. 2:20-CV-00035-SRC, 2021 WL 4459729, at *5 (E.D. Mo. Sept. 29, 2021) (citations omitted). The ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

The Court finds that the ALJ adequately articulated his consideration of the supportability and consistency factors for each opinion and that his assessment of the persuasiveness of the opinion evidence was supported by substantial evidence. In finding the opinion of Plaintiff's neurologist regarding Plaintiff's migraine-related limitations unpersuasive, the ALJ acknowledged that Dr. Singh's opinions were supported by notations in his opinions and in his own treatment

8

notes indicating that Plaintiff reported having 20 days of headaches and 16 or more days of migraines per month, but the ALJ reasonably found these reports and Dr. Singh's opinion inconsistent with evidence elsewhere in the record in which Plaintiff reported to another provider a 70% reduction in his headaches with the use of Botox. (Tr. 150, 1143, 1224, 1230, 1236).[2] In finding the opinion of nurse practitioner Loretta Colvin regarding Plaintiff's insomnia-related limitations unpersuasive, the ALJ reasonably addressed supportability by finding that the opinion was not well supported given statements in Ms. Colvin's own opinion that Plaintiff was stable on his prescribed sleep aid and his prognosis was good, and that the opinion was not consistent with treatment notes from others indicating that Plaintiff's insomnia was stable and improved on medication. (Tr. 150, 569, 663-64). In finding the opinion of the state agency physical consultants that Plaintiff could do less than a light range of medium work persuasive, the ALJ reasonably addressed supportability by noting that the consultants had supported their opinions with considerations of Plaintiff's migraine headaches and IBS and reasonably addressed consistency by discussing numerous treatment notes showing normal objective findings but finding that other evidence was consistent with a more restrictive RFC than these consultants found. (Tr. 149). Finally, in finding the opinions of the state agency mental consultants that Plaintiff could perform

---

[2] Plaintiff argues that Dr. Singh recognized that Botox helped Plaintiff's migraines and reduced his headache frequency. The Court acknowledges that Dr. Singh noted, in his opinion, a "prognosis" and "goal" of a headache frequency of one to two headaches per month with Botox. (Tr. 1221-22). However, it was not unreasonable for the ALJ to interpret Dr. Singh's opinion as being based on reports that did not account for the significant improvement Plaintiff reported to other providers with Botox. Dr. Singh stated in his opinion that Plaintiff had 16 migraines and 20 headaches per month, which is the same frequency Plaintiff reported when not on Botox or having missed a dose. (Tr. 1224, 1230, 1236). Dr. Singh also opined that Plaintiff would need to take unscheduled breaks of 30-60 minutes 10 to 20 times per month because of his headaches (Tr. 1221), which suggests his opinion was not based on a headache frequency reduced to one or two days a month. Finally, it does not appear from Dr. Singh's treatment notes that Plaintiff ever reported to Dr. Singh how Botox affected either the frequency or severity of his headaches during the relevant period. (Tr. 1224, 1230, 1236).

9

simple work with limited close contact with the public and coworkers persuasive, the ALJ reasonably addressed supportability by noting that the finding was supported by the consultants' findings of moderate limitations in the paragraph B criteria and reasonably addressed consistency by finding their opinions "consistent" with treatment notes showing Plaintiff "at times" showed significant mental symptoms, including being irritable, angry, anxious, or depressed. (Tr. 150, 163, 189). Although the ALJ could have been more detailed in his discussion of these opinions, and although the ALJ could have decided to come to different conclusions about the weight to give to each opinion, the Court finds no error.

The Court next addresses Plaintiff's argument that the RFC is not supported by substantial evidence because the RFC is based on the opinions of the non-examining state agency consultants and the ALJ's own inferences from the findings in the medical records, and not by the opinions of any treating or examining source. For the reasons stated in the Commissioner's brief, the Court finds this argument without merit. The ALJ did not rely solely on the state agency consultants' opinions or the objective findings in reaching the RFC determination, but properly considered that evidence along with the rest of the evidence in the record, including Plaintiff's reports to his treaters, his treaters' observations, and his own testimony about his limitations. *See Hensley v. Colvin*, 829 F.3d 926, 931-32 (8th Cir. 2016) ("The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.") (citation and quotation marks omitted); *Casey v. Astrue*, 503 F.3d 687, 694 (8th Cir. 2007) ("The ALJ did not err in considering the opinion of [the non-examining physician] along with the medical evidence as a whole."); 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence

10

of your symptoms and the effect those symptoms, such as pain, may have on your ability to work."). The ALJ was not required to rely on a particular medical opinion in making the RFC assessment. *See Hensley*, 829 F.3d at 932 ( "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace. However, there is no requirement that an RFC finding be supported by a specific medical opinion.") (citation and quotation marks omitted); *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) ("[T]he ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians.") (quotation marks omitted).

The Court acknowledges that the record contains conflicting evidence related to the persuasiveness of the opinion evidence and Plaintiff's RFC, and the ALJ could have reached a different conclusion on several of these issues. However, this Court's task is not to reweigh the evidence presented to the ALJ. The ALJ's weighing of the evidence here fell within the available "zone of choice," and the Court cannot disturb that decision merely because it might have reached a different conclusion. *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

## VI. CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 3rd day of March, 2025.

11